## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENA SCARSO,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>FCA US LLC, a Delaware Limited<br>Liability Company,<br><br>　　　　　　　　　　Defendant. | No. 19-cv-00866<br><br>COMPLAINT FOR DAMAGES<br><br>**JURY DEMAND** |

### COMPLAINT FOR DAMAGES

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................1

II.  JURISDICTION ............................................................4

III. VENUE ..............................................................................7

IV.  PARTIES ...........................................................................7

    A.   Plaintiff ...................................................................7

    B.   Defendant ................................................................8

V.   FACTUAL ALLEGATIONS ........................................10

    A.   Dena Scarso .........................................................10

    B.   FCA and the ZF Electronic Gear Shifter.............12

        1.   The National Highway Transportation Safety
Administration Has Determined the ZF Shifter Is Poorly
Designed...................................................................15

        2.   Reports to NHTSA Recount Horrifying Incidents of
Vehicle Roll-away...................................................20

        3.   FCA and ZF Maintain That There Is Nothing Wrong
With the Defective Shifter Vehicles .........................23

        4.   FCA's Delayed and Inadequate Response to the
Defectively Designed ZF Shifter Has Led to Hundreds of
Motor Vehicle Accidents, Many Involving Serious
Injury.......................................................................24

        5.   FCA Finally Provides a Purported Remedy for Certain
Defective Shifter Vehicles: One that is Ineffective and
Diminishes the Functionality of the Defective Shifter
Vehicles....................................................................25

6.      FCA Knew or Should Have Known of the Serious Defect
        in the Defective Shifter Vehicles and That the Defect
        Could Lead to Serious Injury and Death. ...................................32

C.     Damages ..................................................................................34

VI.    VIOLATIONS ALLEGED...........................................................35

COUNT I   NEGLIGENCE RESULTING IN PERSONAL INJURY ...................35

COUNT II   NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS .............38

COUNT III   STRICT LIABILITY: PRODUCT LIABILITY ...............................39

REQUEST FOR RELIEF ...........................................................................41

DEMAND FOR JURY TRIAL ...................................................................42

## I.  INTRODUCTION

1.      Car makers must design and manufacturer their cars to be safe to operate.  One of the most basic safety features in every car is the gear shifter that causes a stationary car to remain stationary *unless and until* the driver wants the car to move. The design of a gear shifter must be such that drivers know when a car is safe to exit because it is in the "Park" mode, and if a car maker decides to use a monostable shifter that does not change positions, it must include a safety override that automatically puts the car in "Park" or engages the parking brake when the driver gets out of the car.

2.      FCA US LLC ("FCA") broke this basic rule when it designed and manufactured cars with monostable shifters that did not provide a reliable method of determining gear placement and did not include any safety-override to prevent rollaway accidents. In its 2012-14 Dodge Chargers and Chrysler 300s, and 2014-15 Jeep Grand Cherokees ("Defective Shifter Vehicles"), FCA installed gear shifters, designed and manufactured by ZF Friedrichshafen AG ("ZF"). Departing from the long established "PRND" gear selector that provided a distinct position of the shifter for each gear, ZF shifters were electronic and never actually "shifted" into any gear, instead returning to a central location after being engaged (the "ZF Shifter"). Thus, the only indication that a specific gear has been selected is that a light changes, *i.e.*, when shifting from Drive to Park, the light changes from D to P.

There is no physical Park, Reverse, Neutral or Drive gear level, and there is no safety override function that puts the Defective Shifter Vehicles into Park if a driver attempts to exit the vehicle while it is in another gear.

3.      The ZF Shifter design is dangerously defective because of the lack of a physical gear position that would clearly notify drivers regarding which gear their vehicle is in, *and* the lack of a safety override function that would automatically put the vehicle in Park or engage a parking brake when a driver attempts to exit the vehicle when it is not in Park.  This dangerous defect has resulted in hundreds of accidents and vehicle rollaways as a result of drivers not knowing which gear their transmission is in and/or exiting their vehicle without the vehicle in Park.

4.      The safety issue is real. As of February 2016, the National Highway Transportation Safety Administration ("NHTSA") and the Office of Defects Investigation ("ODI") (collectively, "NHTSA-ODI") had identified over 300 incidents of vehicle rollaway and/or accidents following intended shifts to Park due to the defective ZF Shifter, including 121 incidents that resulted in crashes and 30 that involved injuries.[1] Injuries included fractured pelvises, a ruptured bladder, a

---

[1] *See* Exhibit A at p.1 ("NHTSA-ODI Resume 1," reporting the results of an investigation launched in August 2015 and announcing the opening of an Engineering Analysis).

fractured kneecap, broken ribs, broken noses, facial lacerations requiring stitches, sprained knees, severe bruising and trauma to legs.[2]  There were 325 additional complaints regarding Defective Shifter Vehicles drivers' difficulty shifting into Park.[3]

5.      The design defect was avoidable. FCA competitors, including BMW, have for several years used similar monostable electronic gear shifters that return to center after being engaged. But on the BMW, if the car is not in "park," and the driver opens the door and unbuckles the seat belt, the car automatically shifts into "park," preventing roll-away incidents and accidents.

6.      The Audi A8 luxury sedan used the identical ZF Shifter, but Audi did not introduce a single A8 into the market before designing and implementing a safety override that automatically engaged the electronic parking brake if the driver's door was opened and the seatbelt unbuckled. FCA could have provided a similar safety override, but it chose not to.

7.      Though complaints and accident reports have been ongoing since soon after FCA began selling Defective Shifter Vehicles, FCA initiated a voluntary recall of the over 811,000 Defective Shifter Vehicles in the United States in mid-2016. Initially, FCA only sent a letter to owners describing the design defect of the

---

[2] *See id.* at p.2.

[3] *See id.* at p.1.

ZF Shifter, even though it knew a viable fix existed and could solve the problem. After years of blaming roll-away accidents on its customers and telling them the cars were not defective, the widely publicized death of Anton Yelchin, a popular young actor, and the filing of a class action complaint, caused FCA to finally change its tune and issue a recall to purportedly add an "autopark" feature to the defective shifter mechanism.

8.     FCA's unreasonable delay in fixing the defect and its warning letter was too late for Dena Scarso. Nearly a million Defective Shifter Vehicles remain in unsuspecting owners' driveways and garages. As a result of this dangerous defect, the Defective Shifter Vehicles are a hazard to their owners and the public and directly caused injuries to Plaintiff.

9.     Plaintiff seeks damages for the tortious conduct of FCA related to the defectively designed gear shifter as alleged in this Complaint. Specifically, Plaintiff seeks: compensation for Ms. Scarso's rehabilitation, medical bills, pain & suffering, property damage, overpayment for a defective vehicle, consequential damages, and punitive damages for FCA's knowing disregard for its customers' safety in designing and selling the Defective Shifter Vehicles.

## II.    JURISDICTION

10.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of

interest and costs, and is a civil action in which the parties are citizens of different states.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1390 because a substantial part of the events giving rise to the claim occurred within the Eastern District of New York.

12.    This Court has general personal jurisdiction over FCA because FCA conducts continuous and systematic business throughout the State of New York.

13.    This Court has specific personal jurisdiction over FCA because FCA purposefully availed itself of the privilege of conducting activities in New York, and Plaintiff's damages arise out of or relate to those activities. FCA purposefully placed Chrysler vehicles into the stream of commerce with New York and throughout the United States, and placed Chrysler vehicles into the stream of commerce with the awareness that they were being marketing in New York.

14.    FCA designs, manufacturers, services, finances, promotes, exports, provides warranty support, performs recall obligations, and assures compliance with regulatory standards, laws, and regulations for its vehicles, including those it sends to the state of New York.

15.    FCA recognizes that the market for their product, Chrysler passenger vehicles, is global. FCA acknowledges and calculates that this global market includes the United States and each state in the United States. FCA is also aware

and intends that their product will be used in the United States and each State in the United States. FCA is aware and intends that their product will be used extensively in each State within the United States and that the vehicles will become involved in traffic accidents in each State with the United States. FCA is aware of the importance of automobile design to the potential for injury. FCA is also aware that defects in their vehicles can and will result in injuries. FCA promotes and advertises its commitment to safety to potential customers in the United States and each State therein.

16.     Federal Motor Vehicle Safety Standards (FMVSS's) create safety standards that are applicable to Chrysler vehicles and apply to Chrysler vehicles in each and every State. As part of its specific plan to increase global sales with a specific focus on the United States, FCA attempted to produce vehicles that comply with FMVSS's.

17.     FCA makes all final decisions on recalling defective vehicles in the United States, including New York, and is the agent for communicating recalls and Tread Act decisions to the United States regulatory bodies.

18.     FCA maintains websites for the purpose of promoting and selling vehicles to customers in the United States, and every State therein, including New York.

19.     FCA allocated to existing dealerships the right to promote and advertise Chrysler passenger vehicles to New York residents and in New York media.

20.     FCA has recalled vehicles located in New York. Further, it sent letters and information to customers in New York regarding defects in Chrysler vehicles.

21.     Maintaining jurisdiction over FCA does not create a constitutionally prohibited hardship or a denial of Due Process.

### III.   VENUE

22.     Venue is proper in this Court pursuant to 28 U.S.C. § 1390 because a substantial part of the events giving rise to the claim occurred within the Eastern District of New York. Plaintiff resides in this district. FCA has marketed, advertised, sold, and leased the Defective Shifter Vehicles in this District.

### IV.   PARTIES

**A.     Plaintiff**

23.     Plaintiff Dena Scarso is a resident of New York domiciled in Staten Island, New York. In or around January 10, 2014, Ms. Scarso leased a brand new 2014 Jeep Grand Cherokee Laredo for a monthly payment of roughly $400  (the "Scarso Jeep Grand Cherokee") from Manhattan Jeep Chrysler Dodge located at 678 11th Ave., New York, NY 10019. Ms. Scarso was the primary driver of the Scarso Jeep Grand Cherokee.

24.     Unknown to Ms. Scarso, at the time the vehicle was sold, the Scarso Jeep Grand Cherokee was equipped with a ZF Shifter that was defectively designed. The design defect allows the driver to get out of the vehicle while the vehicle is not in "Park," which can cause the vehicle to roll away from its parked position and potentially cause serious bodily injury to the exiting driver or any other unsuspecting persons in the vehicle's path. The defect in the Scarso Jeep Grand Cherokee caused Ms. Scarso's injuries when the Scarso Jeep Grand Cherokee rolled away striking and injuring her.

25.     FCA knew that the ZF Shifter in the Defective Shifter Vehicles, including the Scarso Jeep Grand Cherokee, could lead to vehicle roll-away incidents. However, FCA did not disclose this defect to the public, Plaintiff, or Ms. Scarso, so Ms. Scarso operated the Scarso Jeep Grand Cherokee on the reasonable, but mistaken, belief that the Scarso Jeep Grand Cherokee was safe to operate as designed.

**B.     Defendant**

26.     Defendant FCA US LLC ("FCA") is a limited liability company organized and existing under the laws of the State of Delaware and is wholly owned by holding company Fiat Chrysler Automobiles N.V., a Dutch corporation headquartered in London, United Kingdom. FCA is doing business throughout the

state of Michigan and elsewhere, including New York. FCA's principal place of business and headquarters is in Auburn Hills, Michigan.

27.     FCA (commonly referred to as Chrysler) is a motor vehicle "Manufacturer" and a licensed "Distributor" of new, previously untitled Chrysler, Dodge, Jeep, and Ram brand motor vehicles. FCA's Chrysler brand is one of the "Big Three" American automobile brands. FCA engages in commerce by distributing and selling new and unused passenger cars and motor vehicles under its Chrysler, Dodge, Jeep, and Ram brands. Other major divisions of FCA include Mopar, its automotive parts and accessories division, and SRT, its performance automobile division. As of 2015, FCA is the seventh largest automaker in the world by unit production.

28.     FCA's business operations include the manufacture, distribution, lease, and sale of motor vehicles and parts through its network of independent, franchised motor vehicle dealers. FCA exports its vehicles globally, including to New York, through a worldwide network of official distributors and dealers.

29.     FCA and/or its affiliates and agents developed and disseminated the owner's manuals, warranty booklets, advertisements, and other promotional materials relating to the Defective Shifter Vehicles.

## V.    FACTUAL ALLEGATIONS

**A.    Dena Scarso**

30.    Dena Scarso is a 59-year-old step-mother of three children (ages 21, 25, 30). Ms. Scarso lives in Staten Island, New York.

31.    On or about February 28, 2017 at approximately 9:45pm, Ms. Scarso was heading to Nucci's Restaurant located within a strip mall at 4842 Arthur Kill Rd. Ms. Scarso entered the strip mall parking lot and pulled into a parking space.

32.    Ms. Scarso shifted her ZF Shifter forward to place the vehicle in Park. She then pushed the ignition button to turn the vehicle off. Ms. Scarso then opened the door and exited the vehicle.

33.    With both of her feet on the pavement, Ms. Scarso reached into the Scarso Jeep Grand Cherokee to grab her purse. In that instant, she felt the vehicle moving backwards.

34.    The open door then knocked Ms. Scarso flat onto her back. The front driver's side tire rolled over Ms. Scarso's legs and feet and came to a stop after rolling several feet. Instantly, Ms. Scarso felt incredible pain in both legs.

35.    Laying on the ground, Ms. Scarso could see pedestrians walking their dog and that there was traffic on Arthur Kill Rd., Ms. Scarso feared that the vehicle would resume its seemingly spontaneous roll out of the parking lot and into the

street. Despite the pain, Ms. Scarso got up and attempted to get back into the vehicle to stop it.

36.     Grabbing the steering wheel, she attempted to hoist herself back into the driver's seat. With her legs weakened by the Scarso Jeep Grand Cherokee rolling over her, the vehicle's open door knocked her down a second time; this time she landed on her side.

37.     The tire ran over the middle section of her torso bruising her ribs. Ms. Scarso lay on the ground screaming for help but nobody answered her cries. She watched as the vehicle continued to roll backwards completely out of control for several yards in the path of an arc.

38.     Despite the pain, Ms. Scarso crawled and tried to enter the vehicle a third time. This time, Ms. Scarso could not re-enter the vehicle and fell back down on the ground.

39.     The vehicle began moving forwards until it hit a fence and stopped. Again, Ms. Scarso crawled to the vehicle. This time, she was able to climb into the now stationary Scarso Jeep Grand Cherokee. She tried to back the vehicle up off the fence but the vehicle was unresponsive. She pushed the ignition, placed the vehicle in reverse, and disengaged it from the fence.

40.     She was taken to Staten Island University Hospital (North) for emergency treatment.

41. In April, 2016, FCA notified Defective Shifter Vehicle purchasers in the United States of a recall in the Defective Shifter Vehicles. However, Ms. Scarso never received notice of the recall.

**B.    FCA and the ZF Electronic Gear Shifter**

42. The Scarso Jeep Grand Cherokee was equipped with the ZF Shifter, which is an 8-speed transmission with an electronic gear selector.

43. On its website announcing a "voluntar[y] recall" of these vehicles, FCA describes the ZF Shifter as follows:

> The vehicles affected by this recall are equipped with electronic shift levers that return to the same position after each manipulation. Gear-selection is conveyed to the driver by multiple sets of indicator lights, not gear-selector position, and unless due care is taken, drivers may draw erroneous conclusions about the status of their vehicles.[4]

44. The ZF Shifter does not have positions for each gear setting, *i.e.*, Park, Reverse, Neutral, Drive ("PRND"). Rather, it always rests in the same position after having been pushed up or down from that position. The following is a picture of the ZF Shifter in a Jeep Grand Cherokee:

---

[4] *See* http://media.fcanorthamerica.com/newsrelease.do?id=17455&amp;mid=1 (last viewed on February 4, 2019).



45.    Among other things, the lack of a physical gear level for PRND and the ZF Shifter's return to its predetermined location has led to hundreds of reports of Defective Shifter Vehicles rolling away when drivers thought their vehicles were in Park.

46.    The ZF Shifter's sole reliance on visual feedback to convey gear selection has been dangerously ineffective. Indeed, consumer complaints beginning at least as early as 2013, reproduced verbatim below, document Defective Shifter Vehicles' owners' and lessees' inability to determine whether their vehicle is in the desired gear resulting in hundreds of rollaways, accidents, and injuries. Further, numerous complaints to NHTSA allege that once a driver puts a Defective Shifter Vehicle in Park, the vehicle can move into another gear on its own.

- 13 -

47.     Importantly, the ZF Shifter does not include a safety override that prevents the driver from getting out of the car when it is not in "park." Other manufacturers, including BMW, use monostable electronic gear shifters like the ZF Shifter, *but the BMW gear shifter has a safety override*. If the BMW is not in "Park" and the driver's door is opened while the seatbelt is unbuckled, the car *automatically* shifts into "Park." This safety override eliminates the possibility of the roll-away incidents that plague the Defective Shifter Vehicles.

48.     Likewise, the Audi A8 luxury sedan uses the same ZF Shifter that FCA used in the Defective Shifter Vehicles. But Audi did not sell a single A8 equipped with the ZF Shifter until it had developed a safety override that automatically engaged the electronic parking brake on the car if the driver's door is opened while the seatbelt is unbuckled.

49.     It is indisputable that from the time FCA first sold a Defective Shifter Vehicle, it had the ability and technological capability to install a safety override that would have prevented the roll-away incidents that have plagued the Defective Shifter Vehicles and caused hundreds of accidents, dozens of injuries, and at least one death. It simply chose not to do so.

50.     FCA has already recognized that the ZF Shifter has a problem. As noted on its website, "To address customer-satisfaction issues, the Company began

equipping the Charger and 300 with a new shift-lever design in model-year 2015. The Grand Cherokee's shift-lever was updated in model year 2016."[5]

51.     FCA has long known of the safety risks associated with the defect in the Defective Shifter.  In FCA's own recall chronology it states that as of April 12, 2016, "FCA US has identified approximately 700 field reports potentially related to this issue which includes 212 crashes, 308 claims of property damage and 41 injuries."[6]

### 1.    The National Highway Transportation Safety Administration Has Determined the ZF Shifter Is Poorly Designed

52.     The National Highway Transportation Safety Administration ("NHTSA") Office of Defects Investigation ("ODI") opened Preliminary Evaluation PE15-030 on August 20, 2015, to investigate 14 reports of roll-away 2014-15 Jeep Grand Cherokee vehicles.[7]

---

[5] *See id.*

[6] *See* FCA US LLC Chronology, Monostable Gear Selector (Submitted on April 22, 2016), available at http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM514516/RMISC-16V240-7112.pdf (last visited February 26, 2018).

[7] *See* http://www-odi.nhtsa.dot.gov/owners/SearchResultsByUrlCode.action?referenceSearch.requestId=48801&referenceSearch.urlCode=RGRCHIUC3ZXFGZZ (last visited February 4, 2019).

53.    In early February, 2016, amid continuing reports of roll-away vehicles, NHTSA upgraded its investigation to an engineering analysis, after determining the issue is one of design rather than defect.[8]

54.    NHTSA described the defect as follows:

> The MY 2014-2015 Grand Cherokee vehicles are equipped with Monostable electronic ("E-shift") gearshift assemblies supplied by ZF Group (ZF).  The E-shift system operates electronically and the gear requested by the driver is transmitted from the shifter via the CAN Bus to the Transmission Control Module which makes the requested shift.  The Monostable gearshift does not move into a detent but springs back to a centered/neutral position after the driver selects a gear and releases the shifter.  A button on the shift knob must be depressed to shift out of Park, shift out of Neutral, and to shift from Drive to Reverse or Park.

> The gear selected is shown on a display in the dash and illuminated letters on the shifter.  If the driver's door is opened when the gearshift is not in Park, a chime sounds and a message is displayed on the EVIC to warn the driver.  In addition, the engine Start/Stop push-button control logic does not permit normal engine shut-off when the transmission is not in Park. This logic may provide feedback to drivers who attempt to turn the engine off when the transmission is not in Park. ***However, this function does not protect drivers who intentionally leave the engine running or drivers who do not recognize that the engine continues to run after an attempted shut-off.[9]***

---

[8] *See* FCA US LLC Chronology, Monostable Gear Selector (Submitted on April 22, 2016), available at http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM514516/RMISC-16V240-7112.pdf (last visited February 26, 2018).

[9] http://www-odi.nhtsa.dot.gov/owners/SearchResultsByUrlCode.action?referenceSearch.request

55.     NHTSA's testing during PE15-030 indicated that the operation of the monostable shifter "is not intuitive and provides poor tactile and visual feedback to the driver, increasing the potential for unintended gear selection."[10]

56.     ODI's analysis of the PE15-030 complaint and field report data "identified 306 incidents of vehicle rollaway following intended shifts to Park in the 2014-2015 Grand Cherokee."[11] These resulted in 117 alleged crashes and caused the following injuries:

> Twenty-eight of the crashes reportedly caused injuries, including 3 with a fractured pelvis and 4 others requiring some degree of hospitalization ([including, but not limited to:] a ruptured bladder, fractured kneecap, broken ribs, damage[] to right leg). Other injuries include reports of a broken nose, facial lacerations requiring stitches, sprained knees, severe bruising, and trauma to legs.[12]

57.     MY 2012-2014 Chrysler 300 and Dodge Charger vehicles (L-cars) equipped with 3.6L engines use the same Defective ZF Shifter found in the Jeep

---

Id=48801&referenceSearch.urlCode=RGRCHIUC3ZXFGZZ (last visited February 4, 2019).

[10] *See* FCA US LLC Chronology, Monostable Gear Selector (Submitted on April 22, 2016), available at http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM514516/RMISC-16V240-7112.pdf (last visited February 26, 2018).

[11] *See* Exhibit A at p. 2.

[12] *Id.*

Grand Cherokee.[13] ODI received 8 complaints, including 4 crashes and 2 injuries on the L-cars.[14]

58.     On April 22, 2016, FCA submitted a Defect Information Report, informing NHTSA that "[t]he existing strategies built into these vehicles to deter drivers from exiting the vehicle after failing to put the transmission into PARK have not stopped some from doing so."[15] FCA admitted that "[d]rivers erroneously concluding that their vehicle's transmission is in the PARK position may be struck by the vehicle and injured if they attempt to get out of the vehicle while the engine is running and the parking brake is not engaged."[16]

59.     NHTSA continued to investigate the defective ZF Shifter and perform its Engineering Analysis through June 24, 2016.  As a result of this analysis, NHTSA found the ZF Shifter "appears to violate several basic design guidelines for vehicle controls, such as: 1) be consistent; 2) controls and displays should function the way people expect them to function; 3) minimize what the user has to

---

[13] *Id.*

[14] *Id.*

[15] http://www-odi.nhtsa.dot.gov/owners/SearchResultsByUrlCode.action?referenceSearch.requestId=48801&referenceSearch.urlCode=RGRCHIUC3ZXFGZZ (last visited February 4, 2019).

[16] *Id.*

remember; and 4) operations that occur most often or have the greatest impact on driving safety should be the easiest to perform."[17]

60.     NHTSA concluded that the "[a]udible chimes" and "visual warning[s]" provided to alert drivers that the vehicle is not in Park when the engine is running and the driver's door is opened are ineffective.[18]  NHTSA stated:

> Based on ODI's interviews with complainants, in some incidents the driver believed they had left the vehicle idling in Park when they exited, but the vehicle was not in Park.  In other incidents the drivers believed they had turned the engine Off after shifting to Park, but failed to recognize that the engine did not shutoff and the vehicle was not in Park.  The engine noise at idle is not obvious to many drivers who may not recognize that the engine continues to run after attempted shutoff.[19]

61.     Lastly, NHTSA identified one fatal crash potentially related to one of the Defective Shift Vehicles, a 2015 Jeep Grand Cherokee, stating:

> In addition to the crashes and injuries documented in this closing resume, ODI is aware of a fatal incident involving a recalled 2015 Jeep Grand Cherokee that occurred over the weekend of June 18-19, 2016 in Studio City, California that may be related to the alleged defect.  The incident is being investigated by the Los Angeles Police Department and FCA.[20]

---

[17] *See* Exhibit C at p. 2 ("NHTSA-ODI Resume 2" announcing the findings of the Engineering Analysis announced in NHTSA-ODI Resume 1).

[18] *Id.*

[19] *Id.*

[20] *Id.*

2. **Reports to NHTSA Recount Horrifying Incidents of Vehicle Roll-away**

62.     NHTSA has received hundreds of reports of roll-away incidents

involving the Defective Shifter Vehicles, including the reports copied verbatim

below:

**2014 Jeep Grand Cherokee**
**Date Complaint Filed:** 12/12/2013
**Date of Incident:** 12/12/2013
**Component(s):** POWER TRAIN, UNKNOWN OR OTHER
**NHTSA ID Number:** 10824970
**Consumer Location:** MAHWAH, NJ
Crash: Yes
Fire: No
Number of Injuries: 0
Number of Deaths: 0
**Manufacturer:** Chrysker (FCA US LLC)
**Vehicle Identification No. (VIN):** 1C4RJFBG1EC…

**SUMMARY:**
FROM A STOPPED POSITION IN PARK, CAR SPONTANEOUSLY SHIFTED
INTO NEUTRAL. *TR

**2014 Jeep Grand Cherokee**
**Date Complaint Filed:** 03/06/2014
**Date of Incident:** 11/01/2013
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10567538
**Consumer Location:** Unknown
Crash: No
Fire: No
Number of Injuries: 0
Number of Deaths: 0
**Manufacturer:** Chrysler (FCA US LLC)
**Vehicle Identification No. (VIN):** 1C4RJFCG0EC…

**SUMMARY:**
PARKING VEHICLE AND PUTTING INTO PARK. EXITED THE VEHICLE
AND CAR STARTED MOVING. SHIFTER WAS NOT IN PARK. VERY
FUSSY SHIFTER. YOU CAN NOT TELL IT'S IN PARK UNLESS YOU LOOK
EACH TIME. EVEN THOUGH YOU PUSH IT ALL THE WAY UP SOMETIMES
IT IS NOT IN PARK. I HAD THE CAR START ROLLING
SEVERAL TIMES AFTER EXITING THE CAR. *TR

**2014 Jeep Grand Cherokee**
**Date of Incident:** 05/19/2016
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10871557
**Consumer Location:** Solon, OH
Crash: Yes
Fire: No
Number of Injuries: 1
Number of Deaths: 0
**Manufacturer:** Chrysler (FCA US LLC)

**SUMMARY:**
MY WIFE PULLED THE CAR INTO A COMMUNITY PARK AND PUT THE
JEEP IN PARK AND OPENED THE DOOR TO GRAB HER SONS LOST DOG.
NEXT THING SHE KNOWS THE JEEP IS ROLLING, AND PROCEEDS TO
RUN HER OVER AND CONTINUES DOWN A SMALL HILL INTO SOME
TREES. SHE WAS TAKEN TO THE HOSPITAL VIA A 911 CALL AND WE
ARE NOW WAITING FOR RESULTS FROM AN MRI. THIS PROBLEM
COULD HAVE KILLED HER IF SHE DIDN'T GET HER HEAD OUT OF THE
WAY.

**2014 Jeep Grand Cherokee**
**Date of Incident:** 08/19/2014
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10870334
**Consumer Location:** Colorado Springs, CO
Crash: Yes
Fire: No
Number of Injuries: 1
Number of Deaths: 0
**Manufacturer:** Chrysler (FCA US LLC)

ON AUGUST 19, 2014, I STEPPED OUT OF MY STATIONARY 2014 JEEP GRAND CHEROKEE OVERLAND BELIEVING I HAD PUT THE VEHICLE IN PARK ON A GENTLE CITYSTREET SLOPE WHEN IT SUDDENLY MOVED BACKWARD, ROLLING OVER MY LEFT LEG AND SEVERELY DAMAGING MY KNEE, SKIN, ARTERY, AND QUAD MUSCLES. MY WIFE IMMEDIATELY CALLED AN AMBULANCE, WHICH TRANSPORTED ME TO A LOCAL HOSPITAL, WHERE DOCTORS SURGICALLY ATTACHED AN "EXTERNAL FIXATOR" IN THREE PLACES, STABILIZING AND COMPLETELY IMMOBILIZING MY LEG (FOR THE NEXT FIVE WEEKS). AFTER A SECOND SURGERY AND OVER A YEAR OF PAINFUL AND ARDUOUS THERAPY LATER, I CAN NOW WALK WITH A KNEEBRACE, HALTINGLY AND WITH A NOTICEABLE LIMP. . . ALL DUE TO THE JEEP GRAND CHEROKEE'S TRANSMISSION THAT DOES NOT ACCURATELY INDICATE WHAT GEAR IT IS IN! UNLESS ONE IS CONCENTRATING 100+% OF THE TIME ON THE CONSOLE SHIFTER AND CONSTANTLY GLANCING AT THE INDICATOR LIGHTS ON THE VEHICLE DASHBOARD THE DRIVER NEVER KNOWS WHAT POSITION THE JEEP'S TRANSMISSION IS IN! THE SHIFTER ON THE CONSOLE ALWAYS LOOKS EXACTLY THE SAME, NO MATTER WHAT GEAR HAS SUPPOSEDLY BEEN SELECTED. WE HAD NO ABSOLUTELY FOREWARNING OF THE POTENTIAL LIFE THREATENING PROBLEM INHERENT IN THIS VEHICLE'S DESIGN, AND I CAN ONLY THANK GOD THAT I'M STILL ALIVE TODAY. LAST WEEK WE WERE SURPRISED TO RECEIVE WRITTEN NOTIFICATION FROM FIAT CHRYSLER AUTOMOBILES THAT THE COMPANY AND NHTSA HAD RECALLED 2014 JEEP GRAND CHEROKEES FOR THE SPECIFIC DEFECT DESCRIBED IN MY INCIDENT ABOVE! (FINALLY! VINDICATION!) THE RECALL NUMBER IS SHOW BELOW, I BELIEVE. FCA VEHICLE RECALL NUMBER: S27 / NHTSA 16V240

**2014 Jeep Grand Cherokee**
**Date of Incident:** 02/25/2016
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10850771
**Consumer Location:** Powell, OH
Crash: Yes
Fire: No
Number of Injuries: 1

Number of Deaths: 0
**Manufacturer:** Chrysler (FCA US LLC)

ON FEBRUARY 25TH, I SHIFTED MY CAR INTO PARK AND WAS GETTING OUT TO LOOK AT BACK WIPER WHICH SEEMED TO BE STUCK. I HAD LEFT THE CAR RUNNING. THE CAR TOOK OFF IN GEAR AND CAUSED ME TO FALL AND BREAK MY ANKLE IN AN OPEN COMPOUND FRACTURE THAT REQUIRED HOSPITALIZATION AND SURGERY. MY JEEP ENDED UP HITTING A PARKED GARBAGE TRUCK AND SUSTAINED ABOUT $5000 DAMAGE. WHO KNOWS WHAT MY MEDICAL BILLS WILL END UP BEING. PLUS MY ANKLE MAY NEVER BE RIGHT. I WILL INCLUDE A PHOTO OF MY CAR AND XRAY. IT HAPPENED ON PRIVATE PROPERTY (TACO BELL PARKING LOT). A POLICE OFFICER CAME AND PARKED MY CAR AND CALLED AN AMBULANCE BUT DID NOT MAKE A REPORT SINCE ON PRIVATE PROPERTY. WE HAVE NOT HEARD FROM GARBAGE TRUCK AND DOUBT IT DID ANYTHING TO IT. THE CAR WAS IN PARK AND NOT SURE HOW FAST WAS GOING WHEN HIT THE GARBAGE TRUCK

### 3. FCA and ZF Maintain That There Is Nothing Wrong With the Defective Shifter Vehicles

63.    While FCA has acknowledged it knows of 41 injuries that may be

related to what it describes as a "confusing" shifter, it has stated: "the vehicles

involved in these events were inspected and no evidence of equipment failure was

found."[21]

64.    ZF issued a press release stating:

ZF supplies gearshift systems to automotive manufacturers according to their technical and design specifications. The manufacturer designs the integration of the gearshift system into the vehicle operating concept and develops the respective safeguard mechanisms. ZF

---

[21] *See* http://jalopnik.com/fiat-chrysler-is-recalling-1-1-million-cars-because-peo-1772561060 (last visited on February 4, 2019).

delivered a fully functional state-of-the-art product, which was integrated into the vehicle architecture by the manufacturer. As such, ZF is unaware of any indications that claims could be made against ZF in the context of the current NHTSA investigations of the FCA vehicle models "2014-15 Grand Cherokee; 2012-14 Charger & 300 w/3.6 l engine".[22]

65.     The Defective Shifter Vehicles have been under investigation by NHTSA since August 20, 2015, yet FCA concealed detailed information on the defect by marking as confidential all but two pages from its owner's manual in the presentation it provided to NHTSA in response to its investigation. FCA has purposefully kept consumers and its customers in the dark about the ZF Shifter defect. This shroud of secrecy has unquestionably increased the risk and frequency of motor vehicle accidents, personal injury, and death to consumers because it has delayed consumer awareness and prevented consumers from taking extreme care whenever operating one of the Defective Shifter Vehicles in order to ensure that the "Park" position is engaged before getting out of a Defective Shifter Vehicle.

**4.      FCA's Delayed and Inadequate Response to the Defectively Designed ZF Shifter Has Led to Hundreds of Motor Vehicle Accidents, Many Involving Serious Injury.**

66.     FCA's foot-dragging on notifying consumers about the dangerous ZF Shifter defect and its failure to take steps to correct it is, unfortunately, business as usual for FCA. As reported in the *New York Times* on June 21, 2016, Center for

---

[22] *See id.*

Auto Safety Executive Director Clarence Ditlow said, "There was no sense of urgency on Chrysler's part or NHTSA's part given the potential for death or injury."[23] The *Times* pointed out that NHTSA "had publicly chastised the company, which acknowledged delaying recalls in almost two dozen cases going back to 2013 and affecting millions of vehicles."[24] NHTSA Head Mark Rosekind had said at the time, "[t]his represents a significant failure to meet a manufacturer's safety responsibilities."[25]

67.     FCA promised to speed up its recalls and agreed to pay close to $105 million in penalties. But this case evidences the fact that little has changed. FCA, true to its corporate culture, is still putting profits ahead of safety and FCA customers and drivers are being maimed, even killed, as a result.

**5.     FCA Finally Provides a Purported Remedy for Certain Defective Shifter Vehicles: One that is Ineffective and Diminishes the Functionality of the Defective Shifter Vehicles.**

68.     After its prolonged and unreasonable delay, FCA responded to the defective shifter maelstrom by providing a purported remedy that: (1) is ineffective

---

[23] Christopher Jensen, *Anton Yelchin's Death Highlights a Known Issue With Jeeps*, N.Y. TIMES, June 21, 2016, http://www.nytimes.com /2016/06/22/business/anton-yelchins-death-highlights-a-known-issue-with-jeeps.html?_r=0 (last visited February 4, 2019).

[24] *Id.*

[25] https://www.freep.com/story/money/cars/chrysler/2015/12/09/fiat-chrysler-national-highway-safety-administration-nhtsa-fine/77069226/ (last visited February 4, 2019).

and/or causes rollaways of Defective Shifter Vehicles; (2) leads to other mechanical failures in the Defective Shifter Vehicles; and/or (3) diminishes the functionality of the Defective Shifter Vehicles.

69.     Moreover, numerous Defective Shifter Vehicle owners have reported that they never received a recall notice from FCA, and have yet to be contacted by the Company or offered the purported remedy for the defective ZF Shifter in their Defective Shifter Vehicles.

70.     Moreover, many of those who have had their Defective Shifter Vehicle repaired by FCA report that the repair was ineffective such that the vehicles continue to experience rollaway incidents (or experienced a rollaway for the first time after the repair) or incidents where their vehicle is not in the intended gear.

71.     On information and belief, dealerships have reported that the first recall remedy was ineffective, many of the Defective Shifter Vehicles have had to be fixed more than once, and they are unsure whether the second recall remedy will, in fact, effectively fix the ZF Shifter.

72.     FCA already has admitted that at least 13,000 Defective Shifter Vehicles in the United States have not been properly fixed even though they were

recalled and repaired by the Company.[26]  According to a November 16, 2016 *Associated Press* article: "The new software was supposed to make the cars and SUVs automatically shift into park when the driver's door is opened while the engine is running.  But Fiat Chrysler says the change didn't properly fix 13,000 vehicles in the U.S. and 16,000 in other countries."[27]

73.    FCA spokesman Eric Mayne stated: "The software didn't work in a small number of vehicles with certain engine, transmission and two- or four-wheel-drive combinations. . . . In most cases we initiated the installation of that software without the customer having to show up with the recall notice in hand. It just wasn't the right software for their particular vehicles."[28]  Thus, certain consumers have experienced dangerous rollaway incidents after their Defective Shifter Vehicles were repaired.

74.    FCA sent certain Defective Shifter Vehicle owners a second recall notice, informing them of the need to take their Defective Shifter Vehicle to the dealership for additional repairs.  The second recall notice states:

> Our records indicate that the recall repairs were attempted on your vehicle at a FCA US dealer.  Further investigation

---

[26]  *See* Tom Krishner, *Software Fix Didn't Work on Some Fiat Chrysler Gearshifts*, The Washington Times, Nov. 16, 2016, https://www.washingtontimes.com/news/2016/nov/16/software-fix-didnt-work-on-some-fiat-chrysler-gear/ (last visited February 26, 2018).

[27]  *Id.*

[28]  *Id.*

by FCA US has determined, however, that **your vehicle did not receive the complete and proper recall repair. Your vehicle's software requires additional updating.** . . . . **Until the complete recall repair is performed on your vehicle, your vehicle may roll away striking and injuring you, your passengers, or bystanders, if the vehicle's engine is left running, the parking brake is not engaged and the vehicle is not in the "PARK" position before exiting the vehicle.**"[29]

75.     Consumers also report that FCA's purported remedy led to other mechanical failures in their Defective Shifter Vehicles.  These mechanical failures occurred shortly after the software update was performed on the Defective Shifter Vehicles.

76.     Below is a sample of complaints lodged with NHTSA as a result of FCA's purported remedy:

**2014 Jeep Grand Cherokee**
**Date Complaint Filed:** 08/14/2016
**Date of Incident:** 08/11/2016
**Component(s):** POWER TRAIN, UNKNOWN OR OTHER
**NHTSA ID Number:** 10895811
MY JEEP WAS SERVICED TWICE FOR THE RECENT SHIFTER PROBLEM THAT CHRYSLER IDENTIFIES AS DRIVER INATTENTION OR CONFUSION. THE SOFTWARE PATCH THAT IS INTENDED TO "AUTO PARK" THE VEHICLE, HAS FAILED ON TWO OCCASIONS. THE ENGINE IS STARTED, I APPLY THE BRAKE AND PLACE THE SHIFTER INTO REVERSE OR A FORWARD GEAR. I THE DESIRED GEAR IS ILLUMINATED AND I EASE OF THE BRAKE, HOWEVER, WHEN APPLY GAS THE ENGINE SIMPLY RACES AS IF THE TRANSMISSION IS STILL IN PARK OR NEUTRAL. JEEPS ATTEMPT TO FIX A PROBLEM HAS NOW LED TO

---

[29] *See* Exhibit D at p. 1 ("Notice of Need For Additional Repairs") (emphasis in original).

ANOTHER PROBLEM. THIS VEHICLE IS UNRELIABLE AND A DEATH MACHINE. I HAVE NO CONFIDENCE IN IT'S OPERATION AND I CAN'T IN GOOD CONSCIENCE SELL THIS VEHICLE TO ANYONE. JEEP CORPORATE SHOULD BE IN JAIL.

**2014 Chrysler 300**
**Date Complaint Filed:** 08/15/2016
**Date of Incident:** 08/01/2016
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10895959
TL* THE CONTACT OWNS A 2014 CHRYSLER 300. THE CONTACT STATED THAT THE VEHICLE WAS PREVIOUSLY REPAIRED PER NHTSA CAMPAIGN NUMBER: 16V240000 (POWER TRAIN); HOWEVER, THE VEHICLE WAS STILL EXPERIENCING THE SAME FAILURE. THE CONTACT STATED THAT THE VEHICLE SLIPPED OUT OF PARK SEVERAL TIMES AFTER BEING REPAIRED. THE CONTACT NOTIFIED THE DEALER, BUT HAD NOT RECEIVED AN ALTERNATIVE REPAIR SOLUTION. THE FAILURE MILEAGE WAS 10,000. UPDATED 10/04/16*LJ

**2014 Jeep Grand Cherokee**
**Date Complaint Filed:** 08/24/2016
**Date of Incident:** 08/16/2016
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10898220
I DRIVE THE 2014 GR CHEROKEE WITH THE ELECTRONIC GEAR SHIFTER THAT HAS BEEN RECALLED FOR THE SHIFTER NOT ENGAGING ALL OF THE WAY INTO PARK. I HAD THE RECALL 'FIX' DONE A COUPLE OF MONTHS AGO, BUT THEN FOUND OUT FROM THE DEALER THAT THE EMERGENCY BRAKE ONLY ENGAGES IF YOU ATTEMPT TO OPEN ONE OF THE DOORS. ABOUT A WEEK AGO, AFTER PARALLEL PARKING ON A BUSY CITY STREET, I PUT THE CAR IN PARK AND REMAINED IN THE CAR FOR ABOUT ANOTHER MINUTE WHILE FISHING QUARTERS OUT OF MY CUPHOLDER (FOR THE PARKING METER). I ALL OF A SUDDEN FELT LIKE SOMETHING HIT MY CAR, LOOKED UP ONLY TO FIND MY CAR HAD ROLLED BACKWARD INTO THE PARKED CAR BEHIND ME. I HAVE A HUGE BIKE RACK ON THE BACK OF MY JEEP THAT BLOCKS THE REVERSE CAMERA, SO THE AUDIBLE SECURITY ALERT IS ALWAYS ON WHEN THE CAR IS IN REVERSE - THIS ALERT DID NOT COME ON WHILE THE CAR WAS ROLLING BACKWARD, THEREFORE, THE CAR WAS NOT IN REVERSE,

BUT RATHER NOT IN PARK ALL OF THE WAY. THANKFULLY THERE WERE NO PEDESTRIANS BEHIND MY CAR, NOR ANY DAMAGE TO EITHER VEHICLE, HOWEVER, IF A PERSON WOULD HAVE HAD THEIR BACK TO ME, I WOULD HAVE CRUSHED THEM BETWEEN THE TWO CARS. MY CAR HAS NOW BEEN AT THE DEALERSHIP FOR 6 DAYS (SECOND TIME FOR SAME ISSUE) AND I'M DEALING WITH CUSTOMER SERVICE DEPARTMENTS WITHIN CHRYSLER/JEEP TO RECTIFY THIS ISSUE SOMEHOW. I WANT EITHER A NEW GEAR SHIFTER THAT IS NOT ELECTRONIC, OR TO GET OUT OF THIS VEHICLE. THIS GEAR SHIFTER IS AN ENORMOUS SAFETY HAZARD. I FEEL LIKE I'M GETTING THE RUN-AROUND, TO SAY THE LEAST, ABOUT A MAJOR RECALL THAT IS THE AUTO MAKERS FAULT, NOT THE CONSUMER. FOR THE RECORD, I HAVE BEEN DRIVING APPROXIMATELY 30 YEARS AND TYPICALLY AVERAGE 20-30K MILES/YEAR. I AM CONSULTING A LAWYER AT THIS POINT.

**2013 Chrysler 300**
**Date Complaint Filed:** 09/08/2016
**Date of Incident:** 08/25/2016
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10904633
TL* THE CONTACT OWNS A 2013 CHRYSLER 300. THE CONTACT STATED THAT THE VEHICLE FAILED TO SHIFT OUT OF PARK. THE VEHICLE WAS SERVICED PER NHTSA CAMPAIGN NUMBER: 16V240000 (POWER TRAIN), BUT THE REMEDY FAILED TO REPAIR THE VEHICLE. THE CONTACT MENTIONED THAT THE FAILURE OCCURRED ON THE SAME DAY SHORTLY AFTER THE RECALL REPAIR. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS UNKNOWN.

**2012 Chrysler 300**
**Date Complaint Filed:** 10/04/2016
**Date of Incident:** 10/01/2016
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10913784
TL* THE CONTACT OWNS A 2012 CHRYSLER 300. AFTER ATTEMPTING TO PLACE THE VEHICLE IN PARK AND EXIT, THE CONTACT DISCOVERED THAT THE GEAR SHIFT FAILED TO MOVE INTO THE PARK POSITION AND THE ACCESSORY WARNING INDICATOR ILLUMINATED. THE CONTACT RECEIVED NOTIFICATION OF NHTSA CAMPAIGN NUMBER: 16V240000 (POWER TRAIN), BUT THE REMEDY FAILED TO

REPAIR THE VEHICLE. THE VEHICLE WAS DIAGNOSED A SECOND TIME AND THE TECHNICIAN STATED THAT THE RECEIVING CODE FOR THE TRANSMISSION WAS NOT UPDATED TO THE COMPUTER. THE VEHICLE WAS NOT REPAIRED DUE TO THE PART BEING ON BACK ORDER. THE CONTACT MENTIONED THAT THE ACCESSORY INDICATOR REMAINED ILLUMINATED AFTER THE RECALL REPAIR. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 57,000.

**2012 Dodge Charger**
**Date Complaint Filed:** 08/23/2016
**Date of Incident:** 08/16/2016
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10897869
TL* THE CONTACT OWNS A 2012 DODGE CHARGER. THE CONTACT STATED THAT THE VEHICLE WAS TAKEN TO THE DEALER WHERE IT WAS REMEDIED PER NHTSA CAMPAIGN NUMBER: 16V240000 (POWER TRAIN). ATER LEAVING THE DEALER, THE CHECK ENGINE AND TRANSMISSION WARNING INDICATORS ILLUMINATED. THE VEHICLE COULD NOT BE DRIVEN OVER 20 MPH. THE VEHICLE WAS TAKEN BACK TO THE DEALER, BUT THE DIAGNOSIS WAS UNKNOWN. THE MANUFACTURER WAS NOTIFIED OF THE ISSUE. THE FAILURE MILEAGE WAS APPROXIMATELY 30,000.

**2013 Dodge Charger**
**Date Complaint Filed:** 09/20/2016
**Date of Incident:** 08/12/2016
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10908275
TL* THE CONTACT OWNS A 2013 DODGE CHARGER. THE CONTACT RECEIVED A RECALL NOTIFICATION OF NHTSA CAMPAIGN NUMBER: 16V240000 (POWER TRAIN). THE CONTACT TOOK THE VEHICLE TO THE DEALER. WHEN THE DEALER TRIED TO REPLACE THE PART, THE TRANSMISSION CONTROL MODULE CRASHED AND THE ENGINE STALLED. THE MANUFACTURER WAS MADE AWARE OF THE ISSUE. THE CONTACT HAD NOT EXPERIENCED A FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 17,000.

**2012 Dodge Charger**
**Date Complaint Filed:** 10/03/2016

**Date of Incident:** 08/11/2016
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10911109
TL* THE CONTACT OWNS A 2012 DODGE CHARGER. AFTER THE
VEHICLE WAS REPAIRED PER NHTSA CAMPAIGN NUMBER: 16V240000
(POWER TRAIN), THE CONTACT BEGAN TO EXPERIENCE A FAILURE.
THE CONTACT STATED THAT THE SHIFTER FAILED TO LOCK INTO THE
DESIRED POSITION. THE CONTACT HEARD A LOUD CLONKING NOISE
COMING FROM THE TRANSMISSION. THE DEALER DIAGNOSED THAT
THE REPAIR CAUSED THE TRANSMISSION TO FAIL. THE CONTACT WAS
UNSURE OF THE DETAILS OF THE REPAIR. THE VEHICLE WAS NOT
REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE
FAILURE. THE FAILURE MILEAGE WAS UNKNOWN.

77.     Moreover, when effective, the remedy diminishes the functionality of

the Defective Shifter Vehicles.  When a driver of a Defective Shifter Vehicle opens

the driver-side door but the car is not in Park, the software fix abruptly places the

vehicle in Park even if the driver is not exiting the vehicle.

**6.     FCA Knew or Should Have Known of the Serious Defect in the
Defective Shifter Vehicles and That the Defect Could Lead to
Serious Injury and Death.**

78.     FCA's knowledge as described in this Complaint is reflected in

internal communications, including memoranda and e-mail, and in reports of other

incidents—including those compiled in the NHTSA database, which FCA

regularly reviews—involving FCA's vehicles.

79.     On information and belief, FCA's knowledge as described in this

Complaint is reflected in Defendant's compilations and analyses of crash data;

80.     On information and belief, FCA's knowledge as described in this Complaint is reflected in the results of tests conducted by Defendant and others, including but not limited to failure mode and effects analyses (FMEA), human factors simulations, pre-release vehicle evaluation tests, computer simulations, and cost/benefit analyses.

81.     Upon reasonable inspection and testing of the Defective Shifter Vehicles, including the Scarso Jeep Grand Cherokee at issue in this case, and each of the Defective Shifter Vehicles' components, Defendant knew or should have known that the Defective Shifter Vehicles, including the Scarso Jeep Grand Cherokee, were defective and unreasonably susceptible to failure.

82.     Defendant knew or should have known of the defective design and manufacture of the Defective Shifter Vehicles, including the Scarso Jeep Grand Cherokee, and failed to take reasonable corrective steps in curing the defects.

83.     Defendant had sufficient knowledge, expertise, availability, and resources to inspect the Defective Shifter Vehicles, including the Scarso Jeep Grand Cherokee, for defects before sale or lease.

84.     Defendant failed to properly inspect and confirm the safety of the Defective Shifter Vehicles, including the Scarso Jeep Grand Cherokee, before allowing it to enter into the stream of commerce.

85.     Defendant failed to complete a reasonable inspection of the Defective Shifter Vehicles, including the Scarso Jeep Grand Cherokee, which would have revealed the unreasonably high potential for the failure of the Defective ZF Shifter.

86.     The Defective Shifter Vehicles, including the Scarso Jeep Grand Cherokee, were manufactured without adopting adequate quality control measures and while using inappropriate manufacturing procedures.

**C.      Damages**

87.     As a result of the Scarso Jeep Grand Cherokee's failure to keep her vehicle in Park, Ms. Scarso has suffered numerous medical issues, including, but not limited to:

a.      Fractured left leg;
b.      Constant pain in legs, hips, ribs and back
c.      Pain while standing
d.      Paint while sitting;
e.      Swelling and bruising
f.      Unwanted weight gain
g.      Depression
h.      Nerve damage
i.      Permanent scarring and disclororation
j.      Difficulty walking
k.      Surgery and painful recovery therefrom
l.      Post traumatic stress disorder
m.      Nightmares
n.      Anxiety
o.      Fear of Driving

## VI.   VIOLATIONS ALLEGED

## COUNT I

## NEGLIGENCE RESULTING IN PERSONAL INJURY

88.     Plaintiff incorporates and adopts by reference all facts and allegations contained in the preceding paragraphs as though specifically pled herein.

89.     FCA, as a designer, manufacturer, and seller of the Scarso Jeep Grand Cherokee owed Plaintiff a duty to exercise reasonable care to prevent the Scarso Jeep Grand Cherokee from creating an unreasonable risk of harm to Ms. Scarso, a person reasonably expected to use the Scarso Jeep Grand Cherokee by FCA and who did so in a manner which FCA might have reasonably expected.

90.     The Scarso Jeep Grand Cherokee was defective because FCA failed to exercise reasonable care in order to prevent the Scarso Jeep Grand Cherokee from creating an unreasonable risk of harm. FCA's failures occurred when it manufactured, designed, engineered, developed, tested, approved, inspected, repaired, labeled, advertised, promoted, marketed, distributed, wholesaled, and/or sold the Scarso Jeep Grand Cherokee.

91.     FCA's negligent acts include but are not limited to:

     a.     negligently designing the Scarso Jeep Grand Cherokee;

     b.     negligently designing and incorporating, among other components, a defective electronic shifter;

     c.     failing to exercise reasonable care to prevent the Scarso Jeep Grand Cherokee from creating an unreasonable risk

- 35 -

of harm to the person or property of one who might reasonably be expected to use the Scarso Jeep Grand Cherokee in a foreseeable manner;

d.   manufacturing an unsafe product, the Scarso Jeep Grand Cherokee;

e.   failing to warn the consumer of the risk of harm or injury where a reasonably careful person would have done so under the circumstances;

f.   failing to incorporate safer alternative designs and formulations during the design and manufacture of the Scarso Jeep Grand Cherokee that were practicable and would have eliminated the unsafe nature of the Scarso Jeep Grand Cherokee without impairing its usefulness;

g.   failing to adequately test the Scarso Jeep Grand Cherokee before retail sale or lease; and

h.   failing to adequately inspect, during the manufacture and fabrication, the Scarso Jeep Grand Cherokee.

92.   FCA knew or should have known in the exercise of reasonable care of alternative designs that were technologically and economically feasible, which would have better protected occupants from the negligently designed and manufactured defects described above, but FCA chose not to incorporate these alternative designs.

93.   The risk of rollaway was known or knowable to FCA in light of the recognized and prevailing scientific and technical knowledge available at the time of manufacture.

94. FCA knew or should have known in the exercise of reasonable care that (1) the use of the Scarso Jeep Grand Cherokee may be harmful or injurious to the user, and (2) that risk of harm and injury was not obvious to the user.

95. Defendant's inadequate actions, including its quality-control measures and inappropriate manufacturing practices and procedures, contributed to the failure of the Scarso Jeep Grand Cherokee on February 28, 2017, when Ms. Scarso was attempting to exit the Scarso Jeep Grand Cherokee and the vehicle failed catastrophically.

96. FCA failed to provide adequate warnings or instructions that would have informed an ordinary user of the specific risk of harm and unapparent risk of harm involved in any intended or reasonably expected use.

97. FCA failed to provide adequate warnings or instructions that would have informed an ordinary user of the specific and unapparent risk of harm involved in any failure to properly follow instructions when using the product for its intended and reasonably expected use.

98. As a direct and proximate result of Defendant's breach of its duties, Ms. Scarso sustained serious injuries, damages, and losses that were caused by FCA's negligence while the Scarso Jeep Grand Cherokee was being used in a manner FCA should reasonably have expected.

## COUNT II

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

99.    Plaintiff incorporates and adopts by reference all facts and allegations contained in the preceding paragraphs as though specifically pled herein.

100.    FCA knew or should have known in the exercise of reasonable care that (1) the use of the Scarso Jeep Grand Cherokee may be harmful or injurious to the user, and (2) that risk of harm and injury was not obvious to the user.

101.    Defendant's inadequate actions, including its quality-control measures and inappropriate manufacturing practices and procedures, contributed to the failure of the Scarso Jeep Grand Cherokee on February 28, 2017, when Ms. Scarso was attempting to exit the Scarso Jeep Grand Cherokee and the vehicle failed catastrophically.

102.    FCA failed to provide adequate warnings or instructions that would have informed an ordinary user of the specific risk of harm and unapparent risk of harm involved in any intended or reasonably expected use.

103.    FCA failed to provide adequate warnings or instructions that would have informed an ordinary user of the specific and unapparent risk of harm involved in any failure to properly follow instructions when using the product for its intended and reasonably expected use.

104.    As a direct and proximate result of Defendant's breach of its duties, Ms. Scarso sustained serious injuries, damages, and losses that were caused by FCA's negligence while the Scarso Jeep Grand Cherokee was being used in a manner FCA should reasonably have expected.

105.    As a result of Defendant's conduct, Plaintiff suffered severe physical harm.

106.    As a lessee of the Scarso Jeep Grand Cherokee, Plaintiff was a forseeable user of the Scarso Jeep Grand Cherokee.

107.    As a result, Plaintiff has suffered physical symptoms including nightmares, anxiety, fear of driving, and depression.

## COUNT III

## STRICT LIABILITY: PRODUCT LIABILITY

108.    Plaintiff incorporates and adopts by reference all facts and allegations contained in the preceding paragraphs as though specifically pled herein.

109.    Defendant is an entity engaged in the business of manufacturing, leasing, and selling vehicles, including the Scarso Jeep Grand Cherokee.

110.    Defendant is an entity that designed, assembled, fabricated, produced, constructed, prepared and leased the Scarso Jeep Grand Cherokee.

111.    Defendant is a seller who had actual knowledge of a defect in the Scarso Jeep Grand Cherokee.

112.    Defendant is a seller of the Scarso Jeep Grand Cherokee as it is an entity and manufacturer engaged in the business of selling or leasing vehicles, including the Scarso Jeep Grand Cherokee, for resale, use, or consumption.

113.    Defendant leased the Scarso Jeep Grand Cherokee to Ms. Scarso for her personal use.

114.    The Scarso Jeep Grand Cherokee was placed in the stream of commerce and reached Ms. Scarso without substantial change in the condition in which it was manufactured.

115.    The Scarso Jeep Grand Cherokee was defective. These defects are outlined throughout this Complaint, but include the design and provision of a dangerous, defective shifter.

116.    Under entirely foreseeable and predictable operating conditions, such as those of Ms. Scarso's at the time of the Scarso Jeep Grand Cherokee's failure, the Scarso Jeep Grand Cherokee should not fail.

117.    When the Scarso Jeep Grand Cherokee unexpectedly failed, it did so as a result of the design defects that existed within the Scarso Jeep Grand Cherokee at the time it was manufactured.

118.    Defendant knew or should have known of the defective design of the Scarso Jeep Grand Cherokee and that the Scarso Jeep Grand Cherokee was unreasonably dangerous.

119.   Because of the Scarso Jeep Grand Cherokee's defects, the Scarso Jeep Grand Cherokee was unreasonably dangerous to Ms. Scarso, a person reasonably expected to use or be affected by the Scarso Jeep Grand Cherokee.

120.   The Scarso Jeep Grand Cherokee was unreasonably dangerous because of a defect in its design that created an unreasonable risk of harm to persons or property that would not ordinarily be expected.

121.   The Scarso Jeep Grand Cherokee was unreasonably dangerous because of a defect in its design that created an unreasonable risk of harm to persons or property not outweighed by the benefits to be achieved by such design.

122.   Even when the Scarso Jeep Grand Cherokee and ZF Shifter perform exactly as intended by FCA, the vehicle is unreasonably dangerous.

123.   The Scarso Jeep Grand Cherokee was defective at the time Defendant sold it or when it left Defendant's control.

124.   As a direct and proximate result of the defect in the Scarso Jeep Grand Cherokee's design and manufacture, Ms. Scarso has sustained injuries and damages as described in this complaint.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant FCA in an amount to be determined by the trier of fact for their losses, damages, and harms, economic and non-economic, for punitive and statutory damages, and for all costs,

attorneys fees, expert witness fees, filing fees, pre- and post-judgment interest, and

such other further relief as the Court may deem appropriate, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

**DATED:**  February 13, 2019                Respectfully submitted,


HAGENS BERMAN SOBOL SHAPIRO
LLP

*/s/     Jason Zweig*
Jason Zweig
555 Fifth Avenue
Suite 1700
New York, NY 10017
jasonz@hbsslaw.com

Steve W. Berman
Thomas E. Loeser
1301 Second Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com

Robert B. Carey
11 W. Jefferson St, Suite 1000
Phoenix, AZ, 85003
Telephone: (602) 840-5900
Facsimile: (206) 840-3012
rob@hbsslaw.com

Christopher R. Pitoun
301 N. Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 623-0594
christopherp@hbsslaw.com

*Attorneys for Plaintiff*